# IVAN STEPHAN FISHER
## Attorney At Law
10 E. 40 th Street
25th Floor
New York, New York 10016

IVAN STEPHAN FISHER
LUCAS E. ANDINO
_____
e-mail: ivanfisher@ivanfisher.com

KENNETH M. TUCCILLO
Of counsel
_____
Tel. 212 517-5000
Fax: (646) 495-0988

April 20, 2009

**BY ECF**

Honorable Denny Chin
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re: United States v. Bashir Noorzai
       S2 05 Cr. 19 (LTS)

Dear Judge Chin:

    I write with reference to the sentencing of Bashir Noorzai and in response to the government's sentencing memorandum. The Supreme Court recently clarified that district courts have broad discretion to impose an outside-the-Guidelines sentence as long as the court does not abuse its discretion. In *Gall v. United States*, ___ U.S. ___, 128 S.Ct. 586 (2007), the Court held that:

    a) A district court should begin by correctly calculating the applicable Guidelines range. The Guidelines are the starting point and initial benchmark but are not the only consideration. 128 S.Ct. at 596;

    b) After permitting both parties to argue for a particular sentence, the judge should consider all of 18 U.S.C. § 3353(a)'s factors to determine whether they support either party's proposal. He may not presume that the Guidelines range is reasonable, but must make an individualized assessment based on the facts presented. *Id*. at 596-97.

    c) If the court decides to impose an outside-the-Guidelines sentence, it must consider the extent of the deviation and ensure that the justification is sufficiently

compelling to support the degree of variation and adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. *Id*.;

  d) A reviewing court may only consider the sentence's substantive reasonableness under an abuse-of-discretion standard, taking into account the totality of the circumstances, including the extent of a variance from the Guidelines range, but must give due deference to the district court's decision that the § 3553(a) factors justify the variance. 128 S.Ct. at 594-96.

  *Gall* held that, on abuse-of-discretion review, the Eighth Circuit failed to give due deference to the district court's reasoned and reasonable sentencing decision. Since the district court committed no procedural error, the only question for the Circuit was whether the sentence was reasonable – in other words, whether the district court abused its discretion in determining that the § 3553(a) factors supported the sentence and justified a substantial deviation from the Guidelines range. The Supreme Court held that the Circuit gave virtually no deference to the district court's decision that the variance was justified. The Circuit clearly disagreed with the district court's decision, but it was not for the Circuit to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable.

  Similarly, in *Kimbrough v. United States*, ___ U.S. ___, 128 S.Ct. 558 (2007), .the Supreme Court held that:

  a) Under *United States v. Booker*, 543 U. S. 220 (2005), the cocaine Guidelines and all other Guidelines, are advisory only, and the Fourth Circuit committed error in holding that the crack/powder disparity was effectively mandatory. A district judge must include the Guidelines range in the array of factors warranting consideration, but the judge may determine that in a particular case a within-Guidelines sentence is "greater than necessary" to serve the objectives of sentencing under § 3553(a). 128 S.Ct at 574-75;

  b) The federal sentencing statute, as modified by *Booker*, requires a court to give respectful consideration to the Guidelines, but "permits the court to tailor the sentence in light of other [§ 3553(a)] concerns as well," *Booker* rendered the Sentencing Guidelines advisory, but preserved a key role for the Sentencing Commission. In the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve §3553(a)'s objectives. The sentencing judge, however, is in a superior position to find facts and judge their import under §3553(a) in each particular case. A district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case "outside the 'heartland' to which the Commission intends individual Guidelines to apply." On the other hand, while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the

judge's view that the Guidelines range "fails properly to reflect § 3553(a) considerations." 128 S.Ct. at 570, 574-75;

*Kimbrough* held that the District Court properly "homed in" on the particular circumstances of Kimbrough's case and properly concluded that the crack/powder disparity is at odds with § 3553(a). The Court found that the District Court made a "reasoned appraisal" and no reviewing court could rationally conclude that the sentence reduction Kimbrough received was an abuse of discretion. 128 S.Ct. at 576.

Under these standards, we submit that this is an outside-the-guidelines case in two important ways. The first is unusual and the second is exceptional.

**I**

This case was prosecuted on the theory that it was appropriate to hold Mr. Noorzai accountable for huge amounts of drugs distributed in distant parts of the world. This Court concluded that federal law permits a prosecution in the United States of someone who participates in a geographically remote conspiracy from which, without his knowledge or intent, some small quantity of narcotics are ultimately sent to the United States, whether or not those drugs have anything at all to do with the defendant's intent to distribute in the United States. The government and Probation Department have taken that legal determination, which concerns the separate issue of the Court's jurisdiction over a federal indictment, and extended it to the defendant's sentencing without any analysis of its application in this context.

We urge the Court to conclude that, whether or not acts of co-conspirators performed without a defendant's knowledge or participation may form a proper basis for prosecution in this district, those acts should not be treated as the driving factor in determining an appropriate sentence. Specifically, they should not be relied on as the basis for applying a base offense level reflecting the total quantity of narcotics involved in the overall conspiracy, for a four-level upward role adjustment, or for a two-level enhancement for use of a firearm. If the Court concludes that those factors must be reflected in the Guidelines calculation, it should impose a non-Guidelines sentence that discounts the impact of those factors.

To do otherwise would grossly distort Mr. Noorzai's blameworthiness by attributing to him thousands of kilograms of drugs that are connected to him only pursuant to an attenuated theory and that have little bearing on his personal level of culpability. Mechanical application of the jurisdictional theory as a determinant of the drug quantity, and other enhancement factors that form the basis for Mr. Noorzai's sentence, fails to take into account that Mr. Noorzai's participation in this conspiracy arose in a country where involvement with opium is viewed very differently than it is in the United States.

We submit that, to arrive at a sentence commensurate with Mr Noorzai's actual level of culpability, and taking into account the cultural context in which it occurred, the Court should focus on the quantity of drugs as to which there is evidence supporting the conclusion that Noorzai actually intended distribution in this country. Such an analysis would result in a total drug quantity of 7½ kilograms of heroin, based on the three suitcases that Baz Mohammad and Abdul Bari testified about at trial. *See* Government's Letter of February 19, 2009, at 3, citing Tr. 554-72 (contending that it proved at trial "three shipments of 2.5 kilograms" that Mohammad's couriers picked up from Bari's couriers at points in Southeast Asia and that were eventually transported into the United States.[1]

The government's contention that Mr. Noorzai should be held responsible for possession of a firearm in relation to a drug offense has no basis in the evidence. There is no evidence that a firearm was possessed for the purpose of furthering the importation conspiracy. Mr Noorzai and members of his tribe did, of course, possess weapons in Afghanistan, many of them, but they did so as Afghani freedom fighters battling the Soviet Union for years, with the support and encouragement of the United States government. He and his tribesman risked their lives and many lost their lives to free their people from Soviet oppression and terrorism, and the United States supported them and

---

[1] The government argues in its letter that:

a) The testimony of Mohammad Khalid Razaq proved that Noorzai offered to supply Khalid with heroin in Pakistan (Gov. Ltr. at 2, citing Tr. 219);

b) Baz Mohammad testified that he was introduced to Noorzai by Abdul Bari in 1996 and that Bari (not Noorzai) told him that Noorzai was a member of a Taliban council (Gov. Ltr. at 3 citing Tr. 549-51). From this, the government concludes that this was "a fact which assured Mohammad that the heroin business he did with Noorzai would be free from interference." (*Id*.) (This was Mohammad's conclusion, not Noorzai's statement);

c) According to the government, Noorzai assured Mohammad that he would pack drugs in suitcases for Mohammad's couriers to pick up somewhere in "Southeast Asia" (Gov. Ltr. at 2, citing Tr. 552-53);

d) The government then describes "three shipments of 2.5 kilograms" which Mohammad's couriers picked up from Bari's couriers from points in Southeast Asia and which were eventually transported into the United States. (Gov. Ltr. at 3 citing Tr. 554-72);

e) The government recites a list of alleged multi-kilogram transactions in Southeast Asia between Noorzai and Rikabadi (Gov. Ltr. at 4, citing Tr. 283-300,and Tr. 377-401) and relies on Rikabadi's claims that he had conversations with Noorzai in which Noorzai allegedly told him he had a heroin operation in the United States (Gov. Ltr. at 4, citing Tr. 390).

lauded them for doing so. In performing that duty as a leader of his people and as one who cooperated with and assisted United States agents from the age of fifteen, Noorzai possessed many weapons. But he did not do so in order to import drugs into the United States; he did so to drive the Soviets out of his country and to help topple the Soviet empire.

We recognize that, under this Court's previous determination, the acts Mr. Noorzai is charged with are crimes against the United States even if he had no knowledge that the drugs were coming to the United States. Nevertheless, the Second Circuit's consideration of the Guidelines in relation to criminal activity outside the United States in *United States v. Azeem*, 946 F.2d 13 (2d Cir. 1991), supports the conclusion that accepting the government's narrow legal interpretation in this case would distort the purposes of sentencing, as delineated 18 U.S.C. § 3553(a)[2], because attributing the total quantity of drugs involved in the larger conspiracy to Mr. Noorzai would grossly overstate the seriousness of the offense as it relates to him. Accordingly, we urge the Court to conclude, under § 3553(a), that the rigid application of the Guidelines proposed by the government would over-represent the seriousness of the offense.

*Azeem* held that acts that are not crimes against the United States may not be counted as relevant conduct to set a guidelines base offense level. While we recognize that this Court has concluded that Noorzai's acts *can* be considered crimes against the United States, the rationale underlying *Azeem*'s limitation on the impact of criminal activity outside the United States supports the conclusion that a similar limitation is warranted here.

In *Azeem*, the district court had included, as part of the defendant's relevant conduct, drugs transported from Pakistan to Cairo in a transaction separate from those

---

[2] 18 U.S.C. § 3553 (a) states:
   (a) Factors To Be Considered in Imposing a Sentence. — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider —
    (1) the nature and circumstances of the offense and the history
  and characteristics of the defendant;
    (2) the need for the sentence imposed —
     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
     (B) to afford adequate deterrence to criminal conduct;
     (C) to protect the public from further crimes of the
  defendant; and
     (D) to provide the defendant with needed educational or
      vocational training, medical care, or other correctional treatment in the most effective
    manner.

proven at trial. The Second Circuit held that such crimes may not be considered relevant conduct under USSG §1B1.3 and that the district court erred in counting those drugs when calculating the defendant's offense level:

> [W]e agree that the Cairo transaction should not have been included in the base offense level calculation because it was not a crime against the United States. . . To determine whether the district court's treatment of the Cairo transaction is proper under the Guidelines, we must establish their intent with respect to the issue of foreign crimes and activities . . . The Guidelines section on base offense levels is broadly worded to include "all such acts and omissions that were part of the same course of conduct or common scheme or plan," but does not explicitly address the issue of foreign crimes and activities. U.S.S.G. § 1B1.3(a)(2). However, the Guidelines elsewhere note that foreign sentences may not be used in computing a defendant's criminal history category, but may be used for upward departures from the otherwise applicable range. *See* U.S.S.G. §§4A1.2(h), 4A1.3(a). From these provisions, it follows that Congress, while it has not remained entirely silent, has chosen to assign to foreign crimes a rather limited role. We decline to find that Congress intended to require that foreign crimes be considered when calculating base offense levels simply because Congress did assign foreign crimes a role in fixing upward departures, while remaining silent on their role in calculating base offense levels.

Implicit in the Court's holding in *Azeem* was a recognition that foreign standards of criminal law and procedure cannot readily be relied on as a basis for measuring a defendant's culpability for purposes of sentencing by a court in this country. For the same reason, we submit that, for sentencing purposes, it would not be proper to hold Mr. Noorzai accountable for huge amounts of drugs distributed in other parts of the world where narcotics offenses are viewed differently than in the United States and are not accorded the same level of opprobrium that is attached to such crimes in this country. The approach sponsored by the government would distort Mr. Noorzai's genuine level of culpability by attributing to him thousands of kilograms of drugs that cannot fairly serve as a measure of his degree of criminality. Sentencing based on the inflexible, mathematical approach urged by the government would fail to take into account the unique circumstances of Mr. Noorzai's activities in a country where production of opium is simply not viewed the same way that it is in the United States.

## II

The second basis for imposing a non-guidelines sentence has been present ever since this case began and relates to the extraordinary, dangerous, and extremely important assistance of a very unusual nature provided by Mr. Noorzai to the United States for some twenty years. As the Second Circuit has made clear, even if a defendant's efforts to assist the government do not yield a government motion for a downward departure, they are relevant to the "the history and characteristics of the defendant" within the meaning of 18 U.S.C. § 3553(a)(1), and therefore must be considered by a sentencing court. *United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006). The Court explained that:

> Section 3553(a)(1), in particular, is worded broadly, and it contains no express limitations as to what "history and characteristics of the defendant" are relevant. This sweeping provision presumably includes the history of a defendant's cooperation and characteristics evidenced by cooperation, such as remorse or rehabilitation.

*Id*.

In this regard, we invite the court's attention to the material presented in our recent submission of April 15, 2009. With the Court's permission, I will address more explicitly and at greater length this aspect of our application at sentencing.

### CONCLUSION

For the reasons discussed above, the court should reject the government's call for rigid application of the Guidelines, and should conclude that a substantially lower sentence reflecting Mr. Noorzai's actual level of culpability will be "sufficient, but not greater than necessary," to accomplish the purposes of § 3553 in the present case

Respectfully,

/s/
Ivan S. Fisher
*Attorney for Defendant*
*Bashir Noorzai*

cc: AUSA Anirudh Bansal