USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/15/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :          OPINION

      - against -              :          12 Civ. 7039 (DC)
                                             05 Cr. 19 (DC)
BASHIR NOORZAI,                    :

             Defendant.    :

- - - - - - - - - - - - - - - - - -x

APPEARANCES:          PREET BHARARA, ESQ.
                      United States Attorney for the
                      Southern District of New York
                           By:  Guruanjan Sahni, Esq.
                                Assistant United States Attorney
                      One Saint Andrew's Plaza
                      New York, New York  10007

                      B. ALAN SEIDLER, ESQ.
                      Law Office of B. Alan Seidler
                      580 Broadway
                      New York, New York  10012

**CHIN, Circuit Judge**

      On September 23, 2008, a jury convicted defendant
Bashir Noorzai of narcotics violations, including conspiracy to
import heroin into the United States.  On April 30, 2009, I
sentenced him to life imprisonment.  Noorzai now moves, through
counsel, to vacate, set aside, or correct his sentence pursuant
to 28 U.S.C. § 2255, alleging that his trial counsel, Ivan
Fisher, Esq., provided ineffective assistance.  For the reasons
set forth below, the motion is denied.

<u>BACKGROUND</u>

A.   <u>The Facts</u>

The following facts are derived from the transcripts

of the trial and sentencing, the presentence investigation

report, and other submissions to the Court, including sworn

statements from Noorzai and his trial counsel.[1]

---

[1]     References herein are as follows:  "Ind't" or
"Indictment" for the Second Superseding Indictment, filed April
14, 2008, ECF No. 72; "8/7/2007 Noorzai Aff." for the affidavit
of Bashir Noorzai, dated August 7, 2007, ECF No. 173; "Omnibus
Pretrial Mot." for Defendant Bashir Noorzai's Omnibus Motion and
Memorandum of Law, dated August 10, 2007; "1/2/2008 Fisher
Letter" for the letter from Ivan S. Fisher, Esq. to Haji Bashar
Noorzai, dated January 2, 2008; "1/28/2008 Fisher Letter" for
the letter from Ivan S. Fisher, Esq., to Judge Swain, filed
January 28, 2008, ECF No. 64; "1/28/2008 Fisher Aff." for the
Affirmation of Ivan S. Fisher, Esq., in support of Noorzai's
motion to dismiss, dated January 28, 2008, ECF No. 64; "Jost
Aff." for the Affidavit of Michael Patrick Jost, filed January
28, 2008, ECF No. 64; "Pretrial Mot. Tr." for the transcript of
oral argument on February 7, 2008 regarding Noorzai's pretrial
motions; "Pretrial Conf. Tr." for the transcript of the pretrial
conference on July 31, 2008, ECF No. 146; "Trial Tr." for the
transcript of trial in September 2008; "PSR" for the Presentence
Investigation Report, dated January 8, 2009; "Sent. Tr." for the
transcript of Noorzai's sentencing on April 30, 2009;
"11/24/2010 Fisher Letter" for the letter from Ivan S. Fisher,
Esq. to Haji Bashir Noorzai, dated November 24, 2010; "9/17/2012
Noorzai Aff." for Noorzai's Supporting Affidavit in support of
his motion for relief pursuant to 28 U.S.C. § 2255, filed
September 17, 2012; "Gov't Opp." for the government's
opposition, dated November 13, 2012, ECF No. 190; "11/8/2013
Fisher Aff." for the Affirmation of Ivan S. Fisher, Esq., dated
November 8, 2012, ECF No. 190-1; "Druker Aff." for the
Affirmation of Scott Druker, Esq., dated November 11, 2012, ECF
No. 190-2; "Noorzai Reply" for Noorzai's reply affidavit, dated
December 28, 2012, ECF No. 195; "5/23/2012 Fisher Letter" for

1.   **Noorzai's Offense Conduct**

Noorzai was an Afghan tribal leader and mujahideen warlord who owned hundreds of acres of land in the Afghan province of Kandahar.  PSR ¶¶ 10, 49, 58; Trial Tr. at 75-76. At Noorzai's direction, laborers cultivated his land and grew crops, including opium.  Trial Tr. at 79, 682-83; 9/17/2012 Noorzai Aff. ¶ 12.  Noorzai's subordinates then converted the opium into morphine and heroin, which was subsequently sold to heroin brokers at great profit and smuggled out of Afghanistan. PSR ¶¶ 10, 59; Trial Tr. at 86-92, 114, 118, 387, 682, 685; 9/17/2012 Noorzai Aff. ¶ 12.

Noorzai knew that some of the heroin from his land was ultimately smuggled into the United States in clothing and suitcases.  PSR ¶¶ 10, 15-19; Trial Tr. at 92, 102, 114, 389-90, 552-53, 688, 702, 713-14; 9/17/2012 Noorzai Aff. ¶ 12.  Between 1990 and his arrest in 2005, Noorzai was responsible for the importation and distribution of at least thirty kilograms of heroin.  PSR ¶¶ 25, 31.  The Taliban permitted Noorzai to continue his drug cultivation and trafficking activities with

---

the letter from Ivan S. Fisher, Esq., to the Departmental Disciplinary Committee of the New York Supreme Court, Appellate Division, First Judicial Department, dated May 23, 2012.

impunity, in exchange for Noorzai's financial support.   PSR
¶¶ 11-12; Trial Tr. at 91-97, 173, 687, 692-93, 696.

   2.   **Noorzai's Arrest in the United States**

       In 2004, Noorzai met in Dubai and Pakistan with two
Americans, "Mike" and "Brian," who identified themselves as
officials of the Department of Defense and Federal Bureau of
Investigation, respectively.   8/7/2007 Noorzai Aff. ¶¶ 61, 62,
128; 9/17/2012 Noorzai Aff. ¶¶ 5, 6.   Mike and Brian purportedly
informed Noorzai that they were studying the financial support
of terrorist organizations in Afghanistan and denied that their
project was a counter-narcotics operation.   8/7/2007 Noorzai
Aff. ¶ 63; 9/17/2012 Noorzai Aff. ¶ 5.   According to Noorzai,
Mike and Brian invited him to cooperate and meet with
representatives of the U.S. Government and advised him that he
would be granted safe passage to and from the United States.
8/7/2007 Noorzai Aff. ¶¶ 69-70, 73, 124, 134-35; 9/17/2012
Noorzai Aff. ¶¶ 5-6.

       Unbeknownst to Noorzai, on January 6, 2005, a grand
jury returned a sealed indictment charging him with violations
of the federal drug laws and a warrant was issued for his
arrest.   Gov't Opp. at 5-6.

On April 13, 2005, Noorzai traveled to New York to meet with law enforcement agents.  8/7/2007 Noorzai Aff. ¶ 136; 9/17/2012 Noorzai Aff. ¶ 8; PSR ¶ 21; Trial Tr. at 63.  When Noorzai arrived in New York, he was read his <u>Miranda</u> rights and escorted to a hotel, where he was interviewed by law enforcement agents over an eleven-day period.  Each day, Noorzai was read his <u>Miranda</u> rights before the interview began, and each day he waived those rights and continued talking to the law enforcement agents.  9/17/2012 Noorzai Aff. ¶ 10; PSR ¶ 21; Trial Tr. at 64-65, 68-69.  Noorzai was questioned on a variety of issues, including his knowledge of, and participation in, narcotics trafficking.  9/17/2012 Noorzai Aff. ¶ 12; PSR ¶ 21; Trial Tr. at 67, 73.

On April 23, 2005, Noorzai was advised for the first time about the indictment and warrant for his arrest, and he was placed under arrest.  On April 14, 2008, a Second Superseding Indictment was filed, charging Noorzai with one count of conspiracy to import one kilogram or more of heroin into the United States and to distribute one kilogram or more of heroin knowing or intending that it would be imported into the United States, in violation of 21 U.S.C. §§ 952(a), 959, 960(a)(3), 960(b)(1)(A) and 963; and one count of conspiracy to distribute

and to possess with intent to distribute one kilogram or more of
heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and
846.  Ind't ¶¶ 1-7.

B.   **Prior Proceedings**

   1.   **Pretrial Motions**

        Prior to trial, Noorzai moved to dismiss the
Indictment and to suppress the statements he made to law
enforcement agents after entering the United States.  See
Omnibus Pretrial Mot.; 8/7/2007 Noorzai Aff.; 1/28/2008 Fisher
Letter; Pretrial Mot. Tr.  His motions primarily argued that (1)
the government should be bound to its promise that he would not
be arrested, which it used to lure Noorzai to the United States,
and (2) Noorzai could not have knowingly and voluntarily waived
his rights, as he was unaware that he had been charged, and
because he had believed the promises of safe passage made to him
by government officials.  Omnibus Pretrial Mot. at 13-23, 28-35.
In support of Noorzai's motions, Fisher asserted that he had in
his possession "voluminous documentation including and not
limited to emails between the participants" demonstrating that
the promises of safe passage were authorized by the U.S.
Attorney's Office.  1/28/2008 Fisher Aff. ¶ 1.

By opinion dated April 9, 2008, U.S. District Judge Laura Taylor Swain denied Noorzai's motions.  See United States v. Noorzai, 545 F. Supp. 2d 346 (S.D.N.Y. 2008).  The case was reassigned from Judge Swain to me on June 25, 2008.  On September 9, 2008, I denied Noorzai's motion for reconsideration.

### 2.   Trial, Verdict, and Sentencing

Trial commenced on September 11, 2008.  The government presented testimony from six witnesses.  Defense counsel offered testimony from one witness, and Noorzai did not testify.

On September 23, 2008, the jury returned a verdict of guilty on both counts.  On April 30, 2009, I sentenced Noorzai to terms of life imprisonment on each count, to be served concurrently.

### 3.   Appeal

Noorzai appealed his conviction, arguing, inter alia, that this Court erred by admitting self-incriminating statements he made to government agents after he arrived in the United States and that Fisher provided ineffective assistance.  On May 23, 2011, the Second Circuit affirmed Noorzai's conviction.  See United States v. Noorzai, 422 F. App'x 54 (2d Cir. 2011) (summary order).  The Court declined to address Noorzai's

ineffective assistance claim on direct appeal, without prejudice
to Noorzai's right to raise the issue collaterally.  Id. at 56.
The Second Circuit subsequently denied Noorzai's petition for
rehearing, and the Supreme Court denied his petition for a writ
of certiorari.

### 4.    The Instant Motion

On September 17, 2012, Noorzai filed the instant
motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or
correct his sentence on the ground that he was denied effective
assistance of counsel.  The government filed its response on
November 13, 2012, and Noorzai submitted a reply on February 5,
2013.  The parties appeared for oral argument on February 13,
2013.

### 5.    Fisher's Disciplinary Proceedings

In 2011, Noorzai filed a complaint against Fisher
before the Departmental Disciplinary Committee of the New York
Supreme Court, Appellate Division, First Judicial Department.
9/17/2012 Noorzai Aff. ¶ 23; 5/23/2012 Fisher Letter at 1
(referring to complaint under Docket No. 2011.2872).  Noorzai
apparently alleged that Fisher had engaged in misconduct by
asking Noorzai for $200,000 to purchase 40,000 pages of
documents that purportedly would demonstrate that the promises

-8-

of safe passage made to lure Noorzai to the United States were authorized by the U.S. Attorney's Office, and then never obtaining or using such documents. See 9/17/2012 Noorzai Aff. ¶¶ 23-27; 5/23/2012 Fisher Letter at 1-3. The record is unclear as to whether this proceeding has been concluded.

In January 2012, Fisher was suspended from the practice of law in the U.S. District Court for the Southern District of New York after the District's Committee on Grievances found that he had engaged in improper conduct in another matter -- specifically that he had commingled and misappropriated for his own use a client's funds intended as restitution to the client's victim, in violation of the New York Rules of Professional Conduct.[2]  9/17/2012 Noorzai Aff. ¶ 4.  In March 2013, Fisher was barred from practicing in this District.[3] It does not appear that Fisher has been disciplined for any conduct in this case, as Noorzai has not provided -- and the Court has been unable to locate -- any decisions or orders

---

[2]    See In re Fisher, No. M-2-238, 2012 WL 206122, at *2-4 (S.D.N.Y. Jan. 24, 2012); In re Fisher, No. M-2-238, N.Y.L.J. 1202581234082, adopted by N.Y.L.J. 1202581236632 (S.D.N.Y. Aug. 23, 2012).

[3]    See In re Fisher, No. M-2-238, N.Y.L.J. 1202592531947 (S.D.N.Y. Mar. 14, 2013); see also Benjamin Weiser, Criminal Lawyer Is Barred From Working in U.S. Court, N.Y. Times, Mar. 15, 2013, at A18; Mark Hamblett, Prominent Attorney Loses Right to Practice in Southern District, N.Y.L.J., Mar. 18, 2013, at 1.

subjecting Fisher to any discipline based on his conduct in this case.

## DISCUSSION

Noorzai claims that Fisher, his trial attorney, failed to provide effective assistance of counsel. Specifically, Noorzai alleges that Fisher (1) refused to permit him to testify at trial, despite Noorzai's repeated requests to do so; (2) rested the defense without presenting any evidence on Noorzai's behalf; (3) forced Noorzai to go to trial and refused to permit him to plead guilty; and (4) fraudulently charged him $200,000 to acquire certain purportedly exculpatory documents that did not exist. 9/17/2012 Noorzai Aff. ¶¶ 20-21. For the reasons set forth below, Noorzai's motion is denied.

## A.   Applicable Law

To obtain collateral relief under 28 U.S.C. § 2255, a defendant must show that his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "Because the Sixth Amendment provides criminal defendants with the right to effective assistance of counsel, inadequate representation is a basis for relief under section 2255." Morales v. United States, 635 F.3d 39, 43 (2d Cir. 2011) (internal citation omitted).

-10-

To demonstrate constitutionally defective assistance of counsel, a defendant must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  First, the defendant must show that his counsel's performance "fell below an objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  The court's review "must be highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  A defendant must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also United States v. Berkovich, 168 F.3d 64, 67 (2d Cir. 1999) ("[A]ctions or omissions that 'might be considered sound trial strategy' do not constitute ineffective assistance." (quoting Strickland, 466 U.S. at 689)).

Second, the defendant "must show that the deficient performance prejudiced the defense."  Strickland, 466 U.S. at 687.  To do so, he must demonstrate that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

A district court must hold an evidentiary hearing on a
§ 2255 motion "[u]nless the motion and the files and records of
the case conclusively show that the prisoner is entitled to no
relief." 28 U.S.C. § 2255(b).  The court, however, has a "wide
variety of tools available to it in developing the record during
habeas proceedings," Pham v. United States, 317 F.3d 178, 180
(2d Cir. 2003), and may use its "discretion to determine the
scope and nature of a hearing," Raysor v. United States, 647
F.3d 491, 494 (2d Cir. 2011).  Accordingly, a district court may
satisfy the requirements of § 2255(b) by "us[ing] methods . . .
to expand the record without conducting a full-blown testimonial
hearing." Chang v. United States, 250 F.3d 79, 86 (2d Cir.
2001).

## B.   Application

Noorzai's motion is denied because he fails to
demonstrate that Fisher's assistance fell below an objective
standard of reasonableness or that he was prejudiced by
counsel's allegedly deficient performance.

### 1.   A Testimonial Hearing Is Unnecessary

The parties' submissions reveal some factual disputes
that the Court must resolve.  For example, Noorzai alleges that
he "repeatedly requested his attorney permit him to testify at

-12-

the trial," 9/17/2012 Noorzai Aff. ¶ 20, whereas Fisher states
that he "would not have prevented [Noorzai] from doing so" had
he asked, 11/8/2012 Fisher Aff. ¶ 4.  In addition, while Noorzai
claims that he "never objected to pleading guilty as part of a
cooperation deal [and that he] wanted a cooperation agreement,
and was willing to plead guilty as part of that process,"
Noorzai Reply ¶ 5, both Fisher and his former associate, Scott
Druker, Esq., assert that Noorzai never wanted to plead guilty
and refused to enter any cooperation agreement that required him
to do so, see 11/8/2012 Fisher Aff. ¶ 6 ("Mr. Noorzai insisted
that he would not plead guilty to anything, a position from
which he never moved."); id. ("[W]hen he was told that the
Government would require him to plead guilty as part of his
cooperation, the negotiations toward a resolution broke down.");
Druker Aff. ¶ 5 ("It was my impression that Mr. Noorzai never
wanted to plead guilty.").  Further, the parties dispute whether
Fisher ever received the documents purportedly demonstrating
that the promises of safe passage were authorized by the U.S.
Attorney's Office.  Compare 9/17/2012 Noorzai Aff. ¶ 22
("[T]here were no documents, and Noorzai received no such
documents."), with 11/8/2012 Fisher Aff. ¶ 7 ("I did obtain a

voluminous set of documents [from Patrick Jost], as I told Mr. Noorzai I would.").

Nevertheless, in my discretion, I conclude that I am able to resolve Noorzai's allegations without a "full-blown testimonial hearing." Chang, 250 F.3d at 86; see also Puglisi v. United States, 586 F.3d 209, 212-18 (2d Cir. 2009). Here, "the motion and the files on record," supplemented by the affirmations of counsel and the Court's own familiarity with the case, "conclusively show that [Noorzai] is entitled to no relief." 28 U.S.C. § 2255(b).

### 2.   Noorzai Received Effective Assistance of Counsel

#### a.   Failure To Testify at Trial

Noorzai alleges that he was deprived of effective assistance of counsel because Fisher ignored his repeated requests to testify in his own defense at trial. 9/17/2012 Noorzai Aff. ¶ 20; Noorzai Reply ¶ 2.

A defendant's right to testify in his own defense is personal and may not be waived by his attorney over the defendant's opposition, regardless of tactical considerations. Brown v. Artuz, 124 F.3d 73, 77-78 (2d Cir. 1997); see also Chang, 250 F.3d at 83 ("[R]egardless of strategic considerations that [a] lawyer concludes weigh against such a decision, a

-14-

defendant who wishes to testify must be permitted to do so."
(citations and internal quotation marks omitted)).   An
attorney's obligation to provide effective assistance includes
the responsibility to inform the defendant of the nature and
existence of his right to testify.   Brown, 124 F.3d at 79.
Thus, "any claim by the defendant that defense counsel has not
discharged the responsibility -- either by failing to inform the
defendant of the right to testify or by overriding the
defendant's desire to testify -- must satisfy the two-prong test
established in Strickland v. Washington for assessing whether
counsel has rendered constitutionally ineffective assistance."
Id. (internal citation omitted).

Here, the affirmations submitted by Fisher and his
former associate, Scott Druker, Esq., belie Noorzai's claim that
counsel prevented him from testifying.   In Fisher's affirmation,
he stated that it was his routine practice to advise his clients
that "the decision to testify at a trial is a choice that a
defendant must make for himself, one that [counsel] cannot make
for him."   11/8/2012 Fisher Aff. ¶ 4.   Fisher further affirmed
that he had "no recollection of Mr. Noorzai ever stating to
[him] that he wanted to testify in his defense at trial," but
that if Noorzai had insisted on testifying in his own defense,

-15-

Fisher "would not have prevented him from doing so, even though [he] would have disagreed strongly with that decision." Id. Moreover, Druker specifically recalled that he and Fisher discussed with Noorzai his right to testify and advised Noorzai against testifying.  Druker Aff. ¶ 3.  According to Druker, "Noorzai deferred to our advice and did not dispute or challenge it." Id. Noorzai's self-serving, conclusory statement that Fisher "either ignored [his] requests, or specifically stated that [he] was not permitted to testify," Noorzai Reply ¶ 2, is insufficient to substantiate his claim. See United States v. Arteca, 411 F.3d 315, 322 (2d Cir. 2005).  In light of all the circumstances, to the extent there is any discrepancy between Noorzai's assertions and Fisher's and Druker's statements, I accept and adopt the latter.

Further, even assuming that counsel's assistance fell below an objective standard of reasonableness, Noorzai fails to show a reasonable probability that, had he testified at trial, the jury would not have convicted him.  To the contrary, Noorzai fails to indicate what he would have said, what facts he would have offered to sway the jury, or how the substance of his testimony would have changed the outcome of the proceedings. See, e.g., Rega v. United States, 263 F.3d 18, 22 (2d Cir. 2001)

-16-

(rejecting defendant's claim that counsel refused to permit him to testify where he failed to demonstrate how his testimony would have changed the course of the trial); United States v. Hui Chen, Nos. S4 06 Cr. 457 (DC), 11 Civ. 995 (DC), 2012 WL 1583610, at *3 (S.D.N.Y. May 4, 2012) (rejecting claim that trial counsel prevented petitioner from testifying where petitioner "neither identifies the information to which she would have testified nor explains how that testimony would have altered the outcome of her trial"); Davison v. United States, Nos. 97 Civ. 490 (LAP), 00 Civ. 3064 (LAP), 2001 WL 883122, at *8 (S.D.N.Y. Aug. 3, 2001) (rejecting claim that trial counsel prevented petitioner from testifying because he "presents no evidence of what he would have testified, or of how it might have changed the outcome of the trial"). Indeed, in Fisher's judgment, "it would have been ill advised for Noorzai to testify in his own defense." 11/8/2012 Fisher Aff. ¶ 5. Moreover, Noorzai's claim that he wanted to testify in his own defense is in apparent tension with his claim -- simultaneously advanced herein -- that he wished to plead guilty. Accordingly, even if Noorzai could establish that counsel's conduct was deficient, his claim fails for lack of prejudice.

-17-

b.   Failure To Present a Defense

Noorzai alleges that Fisher provided ineffective assistance by "rest[ing] Noorzai's case without presenting any evidence on Noorzai's behalf."  9/17/2012 Noorzai Aff. ¶¶ 20, 18.

Generally, trial counsel's decision whether to call any witnesses and, if so, which witnesses to call, is a strategic decision that the Court will not second guess.  See United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999).  This is especially true "where the petitioner has failed to identify any specific evidence or testimony that would have helped his case if presented at trial."  Jones v. Hollins, 884 F. Supp. 758, 766 (W.D.N.Y. 1995), aff'd, 89 F.3d 826 (2d Cir. 1995); see also United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 958 (1987).

Noorzai's conclusory claim that counsel failed to present a defense is insufficient to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  According to Fisher, other than calling a single agent to impeach a government witness's testimony, "there was no other defense case to present . . . ."  11/8/2012 Fisher Aff. ¶ 5.

Rather, in Fisher's judgment, it was better trial strategy to challenge the government's witnesses on the issue of whether Noorzai intended to import or distribute drugs in the United States, rather than presenting a separate defense case.   Id. The strategy, in my view, was sound.

Moreover, although Noorzai did not testify in his own defense at trial and Fisher offered only one agent as a defense witness, any suggestion that Fisher entirely failed to defend Noorzai is incorrect.   Based on my own observations, I note that Fisher skillfully cross-examined the government's witnesses during trial and offered a spirited and capable defense throughout the proceedings in this case.

Further, Noorzai's claim also fails under Strickland's second prong, as he has not indicated how counsel's alleged failure to present a defense case prejudiced him.   Noorzai offers no evidence, beyond his own allegations, that he had a valid defense theory, which counsel failed to present.   Fisher stated that "at no point during [his] representation of Mr. Noorzai did he ever mention a witness whom we should consider interviewing for the purpose of calling as a trial witness.   Nor did he refer to any documents or other tangible evidence that we should present at trial."   11/8/2012 Fisher Aff. ¶ 5.   Even now,

Noorzai has not identified any witnesses or documents that he would have called or introduced, nor described the subject matter or relevance of any proposed testimony or material. Accordingly, Noorzai has not shown that he suffered any prejudice, and his claim fails.

>   b.   **Failure To Plead Guilty**

Noorzai alleges that counsel "refused to permit [him] to plead guilty," and "forced [him] to go to trial." 9/17/2012 Noorzai Aff. ¶¶ 21-22; Noorzai Reply ¶ 5. This claim also fails.

It is well-established that "[t]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case." United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (per curiam) (citation and internal quotation marks omitted). Counsel's duty of effective assistance includes giving advice about this crucial decision. See Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000) ("As part of this advice, counsel must communicate to the defendant the terms of the plea offer and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed."). Yet "the ultimate decision

whether to plead guilty must be made by the defendant[,] [a]nd a
lawyer must take care not to coerce a client into either
accepting or rejecting a plea offer." Id. at 45.

To demonstrate prejudice in this context, a defendant
must show "a reasonable probability that but for counsel's
deficient performance, he would have pled guilty instead of
going to trial." Raysor v. United States, 647 F.3d 491, 495 (2d
Cir. 2011); accord Puglisi, 586 F.3d at 215.   The Second Circuit
has required a defendant to provide "some objective evidence
other than defendant's assertions" that he would have pled
guilty. Pham, 317 F.3d at 182; see, e.g., Gordon, 156 F.3d at
380-81 (disparity between sentence offered in rejected plea and
actual sentence after trial conviction constitutes objective
evidence supporting finding of prejudice under Strickland);
Puglisi, 586 F.3d at 217 (defendant failed to proffer any
objective evidence that he would have accepted plea offer had he
received adequate pretrial counseling).

First, Noorzai's conclusory, self-serving allegations
that Fisher prevented him from pleading guilty are rebutted by
counsel's affirmations and Noorzai's own statements.   Notably,
Noorzai does not allege that counsel failed to communicate the
terms of any plea offer, the strengths and weaknesses of his

-21-

case, or his possible sentencing exposure.   Instead, he alleges

that he "never objected to pleading guilty as part of a

cooperation deal [and that he] wanted a cooperation agreement,

and was willing to plead guilty as part of that process."

Noorzai Reply ¶ 5.  He also argues that Fisher misled him into

not pleading guilty by telling him that, "based on [Fisher's] 38

years of experience the evidence that is being offered to us

will in fact lead to your release," either in the district court

or on appeal.  9/17/2012 Noorzai Aff. ¶ 22 (quoting 1/2/2008

Fisher Letter).

        Both Fisher and Druker, however, indicate that Noorzai

never wanted to plead guilty to any charges and that he refused

to enter any cooperation agreement that required him to do so.

See 11/8/2012 Fisher Aff. ¶ 6 ("Mr. Noorzai insisted that he

would not plead guilty to anything, a position from which he

never moved."); id. ("[W]hen he was told that the Government

would require him to plead guilty as part of his cooperation,

the negotiations toward a resolution broke down."); Druker Aff.

¶ 5 ("It was my impression that Mr. Noorzai never wanted to

plead guilty.").

        In addition, throughout the trial and post-trial

proceedings in this case, Noorzai never suggested or expressed a

desire to plead guilty or that his counsel had prevented him from doing so.  On the contrary, during the sentencing proceeding, Noorzai continued to proclaim his innocence, stating, "in all my life I never did anything against the United States government, against the United States people, and against the United States legal system."  Sent. Tr. at 32:15-18.  This statement undermines Noorzai's claim that he would have accepted a cooperation agreement and pled guilty if Fisher had let him. See <u>Cullen v. United States</u>, 194 F.3d 401, 407 (2d Cir. 1999) (noting that appellant's "insistence on his innocence is a factor relevant to any conclusion as to whether he has shown a reasonable probability that he would have pled guilty").[4]  Again, to the extent there is a discrepancy between Noorzai's assertions regarding the plea discussions and Fisher's and Druker's recollections, I accept the attorneys' recollections.

Second, even accepting Noorzai's claim that he "never objected to pleading guilty as part of a cooperation deal [and that he] wanted a cooperation agreement, and was willing to

_____

[4]      <u>See also</u> Bill Powell, <u>Warlord or Druglord?</u>, Time (Feb. 8, 2007), www.time.com/magazine/article/0,9171,1587252,00.html (when interviewed for a magazine article regarding his case in 2007, Noorzai "talk[ed] in some detail about current members of the Afghan government and other prominent Afghans he suspects are involved in the drug trade -- even while insisting that he was not").

plead guilty as part of that process," Noorzai Reply ¶ 5,

Noorzai fails to meet his burden of showing actual prejudice

under Strickland because his allegations are not corroborated by

any objective evidence that he would have pled guilty.

See Pham, 317 F.3d at 182.  For example, Noorzai does not

indicate what his sentencing exposure would have been had he

pled guilty.[5]  Cf. Cullen, 194 F.3d at 404, 407 (where sentence

exposure at trial was 121 to 151 months and plea offer was for

78 to 97 months, instructing district court on remand "to regard

the disparity" as a positive "factor bearing upon [the

defendant's] credibility" when he said he would have pled

guilty).  Thus, even assuming Fisher's representation was

deficient in that he prevented Noorzai from pleading guilty,

Noorzai has not met his burden of demonstrating that he suffered

prejudice as a result of counsel's alleged deficiency.

      c.  **Failure To Obtain and Use Exculpatory Documents**

Noorzai alleges that Fisher fraudulently charged him

$200,000 to acquire certain purportedly exculpatory documents

that did not, in fact, exist.  9/17/2012 Noorzai Aff. ¶ 22.

---

[5]     Here, the Guidelines analysis was based in part on a
quantity of over thirty kilograms of heroin.  PSR ¶¶ 30-31; see
U.S. Sentencing Guidelines Manual § 2D1.1(c)(1).  Noorzai does
not suggest that a guilty plea would have reduced substantially
the applicable quantity of heroin for sentencing purposes.

According to Noorzai, and as described in a letter from Fisher

to Noorzai dated January 2, 2008, Fisher stated that he could

purchase "some 40,000 pages" of materials from Patrick Jost, who

had worked with Mike and Brian, the individuals who had invited

Noorzai to the United States in 2005.  1/2/2008 Fisher Letter at

1.  In his letter, Fisher explained that these materials

reflected the government's authorization of the promises of safe

passage that Mike and Brian purportedly had made to Noorzai.  As

Fisher stated:

> We can purchase these documents for $200,000
> and you have sought from me a guarantee that
> these documents will result in your release
> from federal custody.  I cannot give you
> such a guarantee and I do not.  It is simply
> beyond my ability to do so.  I can, however,
> say with great confidence that the documents
> I have already received are genuine and that
> based on my 38 years of experience the
> evidence that is being offered to us will in
> fact lead to your release.

1/2/2008 Fisher Letter at 1-2.  Noorzai now alleges that, in

proceeding to trial, he relied on Fisher's promise to procure

these documents and that he was surprised when these documents

were not presented to the jury.  9/17/2012 Noorzai Aff. ¶ 27.

As the government notes, Noorzai's ineffective

assistance claim relies upon two separate assumptions about

these documents:  first, that the documents referenced in

Fisher's January 2, 2008 letter did not actually exist, see id. ¶ 22 ("The attorney's statements, however, were a lie, there were no documents, and Noorzai received no such documents."); id. ¶ 27 ("In fact, there were no exculpatory e-mails, or any other evidence in the possession of Fisher."); and second, that Fisher sought these documents to advance a defense at trial, rather than to support Noorzai's motion to dismiss the Indictment, see id. ¶ 22 ("Noorzai received ineffective assistance of counsel because his attorney lied to him about the defense to be presented at the trial."); id. ¶ 27 ("When it was time to present Noorzai's trial defense to the jury including 40,000 exculpatory documents, there was absolutely nothing presented.").

First, Noorzai's claim that "there were no documents" is belied by the record, which shows that Fisher did obtain documents relating to Noorzai's early communications with the U.S. government and its alleged promises of safe travel to the United States.  In Fisher's affirmation, for example, he stated that he "did obtain a voluminous set of documents [from Patrick Jost], as [he] told Mr. Noorzai [he] would."  11/8/2012 Fisher Aff. ¶ 7.  Druker also confirmed that they "did obtain and use these materials on [Noorzai's] behalf," and they "showed

-26-

portions of these materials to [him] during visits to the MCC."
Druker Aff. ¶ 6.

The existence and acquisition of these materials is
further corroborated by Fisher's pretrial submissions on
Noorzai's behalf.  In particular, on January 28, 2008 -- twenty-
six days after Fisher asked Noorzai for $200,000 to purchase the
documents in question -- Fisher supplemented Noorzai's motion to
dismiss the Indictment with affirmations from himself and
Patrick Jost.  See 1/28/2008 Fisher Letter; 1/28/2008 Fisher
Aff; Jost Aff.  Fisher's January 28, 2008 affirmation stated:

> The information I now share with the court
> in further support of defendant's motion to
> dismiss the indictment in this case and/or
> an order directing the government to uphold
> its promises to Haji Bashir Noorzai of safe
> passage to and from the United States comes
> from discussions with my client . . . as
> well as voluminous documentation including
> and not limited to emails between the
> participants to this massive effort to get
> the defendant into the United States,
> contemporaneous reports of their activities
> distributed to high level officials of the
> Federal Bureau of Investigation ("FBI"), the
> Department of Defense ("DOD"), Drug
> Enforcement Agency ("DEA"), the Central
> Intelligence Agency ("CIA"), and the
> Department of Justice ("DOJ").

1/28/2008 Fisher Aff ¶ 1.  Fisher's affirmation summarized the
information obtained from the "voluminous documentation" he had

reviewed.  <u>See</u> <u>id.</u> ¶¶ 2-8.  The affirmation also described some of those documents, including email reports from Mike and Brian to the FBI that "included references to the promises made to the defendant regarding safe passage," <u>id.</u> ¶ 5, and emails from Brian to Pakistani intelligence officials asking them to tell Noorzai that the promises of safe passage would be honored, <u>id.</u> ¶ 7.  Fisher also stated that, after filing Noorzai's motion to dismiss, he had received "substantial documentation corroborating what [Jost] told [him]" about the promises made to Noorzai before he came to the United States.  <u>Id.</u> ¶ 10. Similarly, Jost's affidavit attached to Fisher's January 28, 2008 letter to the Court also cited numerous emails Jost exchanged with Mike and Brian regarding Noorzai.  Jost Aff. at 1.  Accordingly, the record reveals that Noorzai's contention that "there were no documents" is incorrect.

Second, Noorzai erroneously claims that the documents in question were to be presented at trial, rather than as part of his pretrial motion to dismiss the Indictment.[6]  But this

_____

[6]     In Noorzai's motion to dismiss the Indictment, Fisher did raise the argument that Noorzai was lured to the United States with promises of safe passage, as allegedly demonstrated by the documents in question.  <u>See</u> Omnibus Pretrial Mot. at 13-23; 1/28/2008 Fisher Letter; 1/28/2008 Fisher Aff. ¶ 10; Pretrial Mot. Tr. at 12-17.  After considering the parties' "voluminous submissions," <u>United States v. Noorzai</u>, 545 F. Supp.

claim is refuted by counsel's affirmations and the Court's own
rulings.  As stated in Fisher's January 2, 2008 letter to
Noorzai requesting an additional $200,000 to purchase the
documents, Fisher sought the documents in connection with
Noorzai's motion to dismiss, which at that time was pending
before the Court.  1/2/2008 Fisher Letter.  Fisher explained
that the "information now available to us flatly contradicts"
the government's arguments in opposition to Noorzai's motion to
dismiss.  Id.  According to Fisher, he had made clear to Noorzai
that he did not "intend[] to offer any of these documents into
evidence at trial." 11/8/2012 Fisher Aff. ¶ 8.  Rather, Fisher
believed that "these materials were significant, as they would
substantially buttress our motion to dismiss the Indictment" by
showing that the government had authorized the use of false

---

2d 346, 347 (S.D.N.Y. 2008), Judge Swain held that even if
Noorzai's allegations of government promises and misconduct were
true, dismissal of the Indictment was not warranted because "the
constitutional due process requirement is limited to a guarantee
of a fair trial, regardless of the method by which jurisdiction
was obtained over [him]," id. at 351.  On appeal, represented by
different counsel, Noorzai failed to challenge this holding.  In
fact, in a letter to Noorzai dated November 24, 2010, Fisher
expressed his concern that Noorzai's appellate brief "fail[ed]
to argue that the manner in which the Government obtained [his]
presence in the United States was corrupt and illegal" and that
he was promised safe passage to and from the country.
11/24/2010 Fisher Letter at 1.  Noorzai has not suggested that
his appellate counsel was ineffective for failing to raise this
argument on appeal.

promises to lure Noorzai to the United States, and that it had
"falsely represented that 'Mike' and 'Brian' lacked the legal
authorization" to make binding promises to Noorzai.  Id. ¶ 7;
see also Druker Aff. ¶ 6 ("These materials pertained primarily
to our motion to dismiss the Indictment, insofar as they
supported our claim that the Government had ratified the
promises of safe passage that had been conveyed to Mr.
Noorzai.").

        In addition, counsel was not deficient for failing to
introduce these documents at trial because doing so would have
violated the Court's pretrial rulings precluding Noorzai from
arguing to the jury that he was promised safe passage to the
United States.  See, e.g., Pretrial Conf. Tr. at 9 ("I am
precluding inquiry into the alleged promise of safe passage
under Rule 403.  I think the probative value is substantially
outweighed by the danger of unfair prejudice."); Trial Tr. at
156 (Court agreed to give jury instruction "to the effect that
the circumstances under which the government interviewed Mr.
Noorzai [were] not unlawful"); id. at 318 ("[T]he suggestion of
a promise of safe passage to induce [Noorzai] to get here,
that's off limits."); id. at 644 (noting that a "trickery
instruction" is appropriate); id. at 646 ("I have made it clear

-30-

to Mr. Fisher that he may not argue that Mr. Noorzai was
deceived somehow into coming to the United States.  He may not
argue that there was a promise of safe passage and a breach
thereof. . . . He may not argue that the indictment was somehow
filed under seal and hidden from his client.").

Accordingly, Noorzai's claim that counsel deprived him
of effective assistance by charging him for, and by failing to
obtain or use, the purportedly exculpatory documents fails.

      e.   **Fisher's Disciplinary Proceedings**

Finally, Noorzai notes that he submitted a grievance
against Fisher to the Departmental Disciplinary Committee of the
New York Supreme Court, Appellate Division, First Judicial
Department, 9/17/2012 Noorzai Aff. ¶ 23, and that Fisher was
subject to discipline by the Committee on Grievances of the U.S.
District Court for the Southern District of New York due to his
misconduct in another case, id. ¶ 4.  Although Noorzai has not
submitted a copy of his grievance, it appears that he complained
that Fisher asked him for $200,000 to purchase purportedly
exculpatory documents, and then never obtained or used those
documents.  See 9/17/2012 Noorzai Aff. ¶¶ 23-27; 5/23/2012
Fisher Letter; Benjamin Weiser, Defending the Notorious, and Now
Himself, N.Y. Times, Jan. 5, 2013, at MB1.

-31-

As an initial matter, I note that the fact that Fisher asked Noorzai for $200,000 to purchase documents is highly troubling and raises a host of issues.  First, it is not at all clear that purchasing evidence is ethical or otherwise permissible.  See N.Y. R. Prof. Conduct 3.4(b), N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 (prohibiting attorney from paying, offering to pay, or acquiescing "in the payment of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the matter"); see also Caldwell v. Cablevision Sys. Corp., 20 N.Y.3d 365, 371 (2013) ("What is not permitted and, in fact, is against public policy, is any agreement to pay a fact witness in exchange for favorable testimony, where such payment is contingent upon the success of a party to the litigation.").  Second, it is unclear to whom, if anyone, Fisher paid the $200,000 he received from Noorzai.  Third, at least some of the purchased documents were government emails.  See 1/28/2008 Fisher Aff. ¶ 1; 5/23/2012 Fisher Letter.  Fourth, it is unclear why Fisher did not simply subpoena the documents.  All of these circumstances exacerbate the questionable nature of the conduct.

Nevertheless, I need not resolve these issues, because even assuming Fisher's behavior was unethical, the conduct does

-32-

not relate to the constitutionality of Fisher's representation of Noorzai in this case.  Indeed, Noorzai does not complain about the appropriateness of Fisher's conduct in purchasing documents to support his defense, but simply questions whether Fisher delivered or used the promised documents.  As discussed above, he did so to the extent permitted by the Court.

Moreover, insofar as Noorzai alleges that Fisher overcharged him for these documents or did not turn over the documents to his successor counsel, 9/17/2012 Noorzai Aff. ¶ 26; Noorzai Reply ¶ 4, a § 2255 motion is not the appropriate mechanism to raise this claim, as such allegations do not call into question the constitutionality or legality of Noorzai's sentence.  See Shaw v. United States, 371 F. Supp. 2d 265, 271 (E.D.N.Y. 2005) ("[A] Section 2255 petition is not the proper forum for a fee dispute."); see also 28 U.S.C. § 2255(a).

<u>CONCLUSION</u>

For the foregoing reasons, Noorzai's motion pursuant to 28 U.S.C. § 2255 is denied.  Because Noorzai has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c).  The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

Dated:    New York, New York
          July 12, 2013

DENNY CHIN
United States Circuit Judge
Sitting by Designation

-34-